FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

00 OCT 25 PM 12: 18

CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

AUTOQUOTES, INC.,
a Florida corporation,
    Plaintiff

Civil Action No.:

Filing Date:

v.

3:0 0-cv- 1185 -J- 21C

COMMKITCHEN.COM, L.L.C.,
a Colorado limited liability company, and
ECOMM SYSTEMS CORPORATION,
a Delaware corporation,
KEVIN MINDENHALL,
an individual
    Defendants.

PLAINTIFF'S COMPLAINT AND
DEMAND FOR JURY TRIAL
INJUNCTIVE RELIEF SOUGHT

## PLAINTIFF'S COMPLAINT

AutoQuotes (Florida) Inc., ("AutoQuotes"), for its Complaint against

CommKitchen.com, L.L.C., Ecomm Systems Corporation and Kevin Mindenhall

(collectively the "Defendants"), alleges as follows:

1.    AutoQuotes is a Florida corporation with its principal place of business at 4425

Merrimac Avenue, Suite 3, Jacksonville, Florida 32210. AutoQuotes is the creator and

distributor of a software product designed for manufacturers, distributors and consumers

in the foodservice equipment and supply industry.

2.    On information and belief, CommKitchen.com, L.L.C. ("CKC") is a Colorado

limited liability company with its principal place of business at 1900 Wazee Street, Suite

250, Denver, Colorado 80202-1180. CKC sells foodservice equipment and supplies.

3.    On information and belief, Ecomm Systems Corporation ("Ecomm") is a

Delaware corporation with its principal place of business at 999 18th Street, Suite 210,

Denver Colorado 80202. Ecomm is the parent company of CKC, and provides CKC with its distribution system, technology and business model.

4.     On information and belief, Kevin Mindenhall ("Mindenhall") resides in Denver, Colorado, and is the President, Director and Manager of Ecomm, as well as the Chief Executive Officer of CKC. On information and belief, Mindenhall has, and at all times relevant had, dominant influence in both Ecomm and CKC; the capacity to control the acts of Ecomm and CKC; the ability to supervise the infringing activities of CKC and ECOMM; and has either a financial interest in CKC and Ecomm's infringing activities, or has personally participated in those infringing activities.

## NATURE OF THE ACTION

5.     This is an action by AutoQuotes against the Defendants for (1) federal copyright infringement, under 17 U.S.C. § 101 *et. seq.;* (2) violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1202, *et. seq.*; (3) unfair trade practices under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (4) unfair competition under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et. seq.*, and under the common law of the State of Florida; (5) breach of contract; and (6) civil theft under Fla. Stat. § 812.014. AutoQuotes seeks injunctive relief and damages against the Defendants, and demands a jury trial.

## JURISDICTION AND VENUE

6.     This action arises under the Copyright Act of 1976, 17 U.S.C. § 101 *et. seq.* ("the Copyright Act"), the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201, *et. seq*, and the Lanham Act, 15 U.S.C. § 1125(a). Jurisdiction is conferred upon this Court pursuant

to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a). The doctrine of federal pendant jurisdiction, 28 U.S.C. § 1367, provides this Court with jurisdiction over the alleged state law claims. This Court also has jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action between citizens of different states in which the amount in controversy, exclusive of costs and interest, exceeds seventy-five thousand dollars.

7.     This Court has personal jurisdiction over the Defendants by virtue of their transacting, doing, and soliciting business in the state of Florida, and by virtue of the control the Defendants exercise over their distribution partners who transact business in the state of Florida on the Defendants' behalf.

8.     Venue is proper in this Court under 28 U.S.C. §§ 1391(b) and 1400(a).

## **BACKGROUND**

9.     AutoQuotes has created what it believes to be the first electronic catalog and computer database consisting of foodservice industry information ("AutoQuotes Software").

10.    The AutoQuotes Software is comprised of a comprehensive database, including (without limitation) equipment, supplies, manufacturers, distributors, service agents and consultants in the foodservice industry ("AutoQuotes Database"), and executable code, which allows users to access, display and search through the AutoQuotes Database.

11.    The preparation of the AutoQuotes Database for inclusion in the AutoQuotes Software is an inherently creative process, requiring decision and skill in the selection, organization and arrangement of information.

12.    AutoQuotes selects the manufacturers it decides will best meet the needs of

AutoQuotes customers for inclusion in the AutoQuotes Database.

13. The selected manufacturers send AutoQuotes their manufacturer catalogs and price lists.

14. AutoQuotes reviews the catalogs and lists, and selects the information it finds is most relevant for use in the AutoQuotes Database.

15. AutoQuotes organizes the AutoQuotes Database by using company and industry criteria, including brand names, product names, model numbers, manufacturers, product specifications and pricing information.

16. AutoQuotes arranges the selected data in a manner that is efficient, relevant and easily searchable by AutoQuotes customers.

17. AutoQuotes creates coined phrases for many categories of products in the AutoQuotes Database to aid in the effective organization of the AutoQuotes Database.

18. AutoQuotes adds product descriptions to the AutoQuotes Database to aid its customers in identifying and distinguishing between each product. AutoQuotes decides which specifications are relevant, and then expresses those specifications in its own terms.

19. The AutoQuotes Database is updated on a monthly basis, and contains information on approximately 220,000 foodservice industry products, and 240 manufacturers of such products.

20. AutoQuotes licenses the AutoQuotes Database to manufacturers, distributors and consumers in the foodservice industry throughout the world for use in researching and planning foodservice equipment purchases.

21. For many years, AutoQuotes has spent, and continues to expend, extensive time,

effort and money investigating, gathering, compiling, arranging, evaluating, maintaining and supplementing the information contained in the AutoQuotes Database. AutoQuotes researches market changes in the foodservice industry frequently to ensure the AutoQuotes Database is current and accurate.

22.    The AutoQuotes Database has been deemed worthy of federal copyright registration, and was registered by the Register of Copyrights in the United States Copyright Office on September 19, 2000 (Reg. No. TX 5-158-580), a copy of which is attached hereto as Exhibit A and incorporated herein by this reference.

23.    AutoQuotes' copyrighted content is what attracts its customers. To protect its copyright, AutoQuotes licenses its customers to use the AutoQuotes Database on a restricted basis.    Under a standard end-user agreement, the customer acknowledges AutoQuotes' rights in the AutoQuotes Software and Database.

24.    AutoQuotes has been extraordinarily successful in licensing the AutoQuotes Database.  To date, AutoQuotes currently has more than 10,500 licensed users of the AutoQuotes Database.

25.    AutoQuotes has assured its current licensees that it will not publish, or acquiesce in the publishing, of any part of the AutoQuotes Database on a publicly accessible website.

26.    In July 1999, the Defendants contacted AutoQuotes and expressed their interest in the AutoQuotes Software and Database.

27.    Following the Defendants' inquiry, AutoQuotes sent the Defendants a complete working copy of the AutoQuotes Software as a "demonstration" version.

28.    On or about November 15, 1999, the Defendants purchased a license to use the

AutoQuotes Database for one year.

29.    All versions of the AutoQuotes Database provided to the Defendants contained errors, an indexing system, phrases and descriptions that are unique to the AutoQuotes Database.

30.    All versions of the AutoQuotes Database provided to the Defendants bore AutoQuotes' copyright notices, and contained a license agreement.

31.    On information and belief, the Defendants unlawfully used the AutoQuotes Database to generate their own electronic catalog, which the Defendants published on a publicly accessible web site as their own work, on or about January 26, 2000, at URL "http://www.commkitchen.com" ("Infringing Website").

32.    The Defendants placed portions of the AutoQuotes Database on the Infringing Website so their customers can view the foodservice equipment catalog, and then place orders online or by telephone. The Defendants' nearest distributor then fills the order.

33.    The Defendants have retained distributors in Florida in Tampa, Tarpon Springs and Fort Myers. These distributors fill orders and respond to customers in connection with the Infringing Website in Florida.

## COUNT I – COPYRIGHT INFRINGEMENT

34.    AutoQuotes repeats, repleads and realleges paragraphs 1 through 33, inclusive, and incorporates them herein by reference.

35.    AutoQuotes has complied in all respects with 17 U.S.C. §§ 101, *et. seq.*, and has duly secured the exclusive rights and privileges in the copyright of the AutoQuotes Database. AutoQuotes has been, and still is the sole proprietor of all rights, title and interest in the AutoQuotes Database.

36.     On information and belief, the Defendants infringed AutoQuotes' copyright in the AutoQuotes Database by copying, reproducing, displaying copies publicly, distributing copies publicly and/or preparing derivative works in violation of AutoQuotes' exclusive rights under 17 U.S.C. § 106.

37.     The Defendants had access to the AutoQuotes Database from July 1999 to May 2000.

38.     The Infringing Website is substantially similar to the AutoQuotes Database.  A significant percentage of the foodservice product information on the Infringing website matches the same information in the AutoQuotes Database, including (without limitation) errors, an indexing system, product descriptions and phrases that are unique to the AutoQuotes Database.

39.     AutoQuotes never authorized the Defendants to copy, reproduce, display, distribute or make derivative works from any part of the AutoQuotes Database.

40.     The Defendants admitted to copying and using portions of the AutoQuotes Database in the Infringing Website when AutoQuotes contacted CKC about its unauthorized preparation of derivative works, reproduction, use, display and distribution of the AutoQuotes Database.

41.     On information and belief, the Defendants' infringements have been, and continue to be committed willfully.

42.     By posting unauthorized copies of the AutoQuotes Database on the Infringing Website, the Defendants have actively engaged in, aided, encouraged materially, contributed to, and abetted the unauthorized copying and distribution of AutoQuotes Database by others.

43.     The Defendants' direct and/or contributory copyright infringement has caused, and will continue to cause, AutoQuotes to suffer substantial injuries, loss and damage to their exclusive rights in the AutoQuotes Database.   Therefore, AutoQuotes should be entitled to recover damages and/or profits pursuant to 17 U.S.C. §§ 504 and 505.

44.     The Defendants' direct and/or contributory copyright infringement, and the threat of continuing infringement, has caused, and will continue to cause, AutoQuotes severe and irreparable injury.  AutoQuotes' remedy at law is inadequate compensation for the injuries already inflicted and further threatened by the Defendants.   Therefore, the Defendants should be enjoined pursuant to 17 U.S.C. § 503.

## COUNT II – BREACH OF CONTRACT

45.     AutoQuotes repeats, repleads and realleges paragraphs 1 through 44, inclusive, and incorporates them herein by reference.

46.     On or about November 15, 1999, the Defendants purchased a license to use the AutoQuotes Software from AutoQuotes.

47.     Included with all AutoQuotes Software obtained by the Defendants was the AutoQuotes End-User License Agreement ("EULA"), which stated that installation, copying or otherwise using the AutoQuotes Software signified agreement to the terms of the EULA.

48.     In the process of installing the AutoQuotes Software to access the AutoQuotes Database, the Defendants expressly assented to the terms and conditions of the EULA.  A copy of the EULA is attached as Exhibit B and incorporated herein by reference.

49.     The EULA restricted the Defendants' installation and use of the AutoQuotes Database to only a single office site, a single network, or on a tape backup drive.

50.   The EULA restricted the Defendants' use to five or less people.

51.   The EULA prohibited mailing or otherwise transmitting the program to another office site without a license.

52.   The EULA strictly prohibited recreation or duplication of the AutoQuotes CD.

53.   The EULA strictly prohibited decompilation, disassembly and reverse engineering of the AutoQuotes Software.

54.   Notwithstanding these contractual limitations, on information and belief, the Defendants unlawfully decompiled, disassembled or reverse engineered the AutoQuotes Database, duplicated portions of the AutoQuotes Database, recreated an unauthorized work, then installed and published the work on the Internet, providing access to potentially millions of unauthorized users.

55.   Despite good faith requests by AutoQuotes, the Defendants have refused to cease and desist their unlawful use of the AutoQuotes Database.  The Defendants have thereby materially breached the EULA.

56.   The Defendants' material breach has caused, and will continue to cause, AutoQuotes to sustain significant injuries, loss and damage.   Therefore, AutoQuotes should be entitled to recover damages for the Defendants' breach.

57.   The Defendants' material breach, and the threat of continuing breach has caused, and will continue to cause, AutoQuotes severe and irreparable injury.  AutoQuotes' remedy at law is inadequate compensation for the injuries already inflicted and further threatened by the Defendants.  Therefore, the Defendants should be enjoined pursuant to equitable principles.

## COUNT III – CIVIL THEFT AND CONVERSION

58.     AutoQuotes repeats, repleads and realleges paragraphs 1 through 57, inclusive, and incorporates them herein by reference.

59.     AutoQuotes expends significant time, energy and money in developing the AutoQuotes Database, and such database is a valuable resource and property right of AutoQuotes.

60.     AutoQuotes licenses the AutoQuotes Database to customers for a limited purpose, and specifically proscribes using the AutoQuotes Database for disassembly, reproduction or recreation.

61.     On information and belief, the Defendants knowingly misappropriated portions of the AutoQuotes Database for inclusion and use in the Infringing Website without authorization from AutoQuotes.

62.     On information and belief, the Defendants knowingly used the AutoQuotes Database for their own profit and advantage.  The Infringing Website relies on the content of the AutoQuotes Database to attract customers, business relationships and profits.

63.     The Defendants' use of the AutoQuotes Database has threatened, and continues to threaten AutoQuotes with the loss of current and potential AutoQuotes licensees.

64.     AutoQuotes contacted the Defendants and requested they cease and desist their theft and unauthorized use of the AutoQuotes Database, but the Defendants refused to comply.

65.     On information and belief, the Defendants knowingly obtained and used the AutoQuotes Database, with the intent to temporarily or permanently deprive AutoQuotes of rights or benefits AutoQuotes has in the AutoQuotes Database, thereby violating Fla.

Stat. § 812.014(1)(a).

66.     On information and belief, the Defendants knowingly obtained and used the AutoQuotes Database, with the intent to temporarily or permanently appropriate the AutoQuotes Database to their own use and benefit, thereby violating Fla. Stat. § 812.014(a)(2).

67.     The Defendants' theft of the AutoQuotes Database, and the threat of their continuing theft of the AutoQuotes Database, has and will continue to pose immediate danger of significant loss or damage. Therefore, the Defendants should be enjoined pursuant to Fla. Stat. § 812.035(6).

## COUNT IV – FALSE DESIGNATION OF ORIGIN & MISTAKEN AFFILIATION

68.     AutoQuotes repeats, repleads and realleges paragraphs 1 through 67, inclusive, and incorporates them herein.

69.     The Defendants use their Infringing Website in commerce to sell foodservice equipment and supplies to consumers.

70.     On information and belief, the Defendants removed AutoQuotes' names, titles, logos, terms of use and copyright notices from the AutoQuotes Database, copied portions of the AutoQuotes Database and incorporated them into their own catalog.

71.     Defendants added their own names, titles, logos, terms of use and copyright notices, in order to represent the source and the origin of the AutoQuotes Database as their own.

72.     The Defendants are affirmatively claiming ownership in the portions of the AutoQuotes Database on the Infringing Website. For example:

(1)     Ecomm's public announcement dated January 29, 2000 states, "Ecomm

Systems Corporation announced today that its COMMKitchen.com subsidiary has opened its public online catalog on the COMMKitchen.com Web site . . . The public catalog, called the Virtual Showroom, features more than 20,000 foodservice items and rounds out COMMKitchen.com's e-commerce offering by making its extensive catalog available to the general public."

(2)    The "front page" of the Infringing Website advertises, "Our Virtual Showroom is Now Open! . . . We have over 20,000 items and are adding products daily to provide you with the most extensive product listing in the commercial foodservice industry today!"

73.    The Infringing Website uses portions of the AutoQuotes Database in connection with the names CommKitchen.com and ECOMM Systems Company, and the following logos:

   

74.    The Infringing Website uses portions of the AutoQuotes Database in connection with the Defendants' own copyright notices and terms of use.

75.    On information and belief, the Defendants' use of such terms, names and other false designations of origin in commerce in connection with portions of the AutoQuotes Database, is likely to cause confusion, to cause mistake, or to deceive as to the origin, sponsorship or approval of the AutoQuotes Database in violation of 15 U.S.C. § 1125(a).

76.    On information and belief, the Defendants' use of such terms, names and other false designations of origin in commerce in connection with portions of the AutoQuotes

Database is likely to cause confusion, to cause mistake, or to deceive users as to whether AutoQuotes is affiliated, connected or somehow associated with the Defendants in violation of 15 U.S.C. § 1125(a).

77.     The Defendants' extensive use of the AutoQuotes Database in the Infringing Website is likely to cause members of the public who are familiar with AutoQuotes to think that AutoQuotes is somehow affiliated with the Defendants, or that AutoQuotes licensed the AutoQuotes Database to the Defendants for use on the Internet.

78.     The Defendants' conduct of creating false designations of origin and mistaken affiliation, has caused, and will continue to cause AutoQuotes to suffer substantial injuries, loss and damage.  Therefore, AutoQuotes should be entitled to recover damages, profits, and costs of sustaining this action pursuant to 15 U.S.C. § 1117.

79.     The Defendants' conduct of creating false designations of origin and mistaken affiliation, and the threat of continuing likelihood of confusion, has caused and will continue to cause AutoQuotes severe and irreparable injury.  AutoQuotes' remedy at law is inadequate compensation for the injuries already inflicted and further threatened by the Defendants.  Therefore, the Defendants should be enjoined pursuant to 15 U.S.C. § 1116.

## COUNT V – VIOLATION OF THE DIGITAL
## MILLENNIUM COPYRIGHT ACT

80.     AutoQuotes repeats, repleads and realleges paragraphs 1 through 79, inclusive, and incorporates them herein by reference.

81.     AutoQuotes displays and maintains important copyright management information on the AutoQuotes Database, including (without limitation) the title of the program, the name of the author, terms and conditions of use, and copyright notices.

82.     AutoQuotes' copyright management information is displayed in many places in the AutoQuotes Database, including (without limitation) on the face of the CD-ROM on which the AutoQuotes Database is located, on the initial start-up screen that appears when the AutoQuotes Database is installed, on the "pages" within the AutoQuotes Database, on the EULA which every user of the AutoQuotes Database must "click-to-accept," and on all desktop icons which appear in connection with the program.

83.     AutoQuote's copyright management information existed in the copies distributed to the Defendants.

84.     The AutoQuotes copyright management information that once was displayed in connection with the AutoQuotes Database is no longer present on the information from the AutoQuotes Database that is now in the Infringing Website.

85.     Today, the portions of the AutoQuotes Database in the Infringing Website are displayed with false copyright management information, including (without limitation), the title CommKitchen.com, the names CommKitchen.com L.L.C. and Ecomm Systems Company, as well as the Defendants' logos, terms of use and copyright notices.

86.     Neither AutoQuotes nor the law gave the Defendants permission or authorization to remove or alter any of the AutoQuotes Database copyright management information.

87.     On information and belief, the Defendants intentionally removed all AutoQuotes copyright management information when the Defendants decompiled, disassembled, and reverse engineered the AutoQuotes Database, thereby violating 17 U.S.C. § 1202(b)(1).

88.     On information and belief, the Defendants intentionally added false copyright management information when the Defendants recreated, copied, and prepared a derivative work from the AutoQuotes Database, thereby violating 17 U.S.C. § 1202(b)(1).

89.    On information and belief, the Defendants added false copyright management information with the intent to induce, enable, facilitate or conceal their infringement, thereby violating 17 U.S.C. § 1202(a)(1).

90.    On information and belief, the Defendants published portions of the AutoQuotes Database on the Infringing Website, thus distributing portions of the AutoQuotes Database with knowledge that the AutoQuotes copyright management information had been removed or altered, thereby violating 17 U.S.C. § 1202(b)(2).

91.    On information and belief, the Defendants distributed false copyright management information on portions of the AutoQuotes Database on the Infringing Website knowingly, or with reason to know that such actions would induce, enable, facilitate or conceal its acts of copyright infringement, thereby violating 17 U.S.C. § 1202(b)(3).

92.    The Defendants' removal, alteration and addition of false copyright management information has caused, and will continue to cause AutoQuotes to suffer substantial injuries, loss and damage.  Therefore, AutoQuotes should be entitled to recover damages pursuant to 17 U.S.C. §1203.

93.    The Defendants' intentional and willful removal, alteration and addition of false copyright management information has caused, and continues to cause AutoQuotes severe and irreparable injury.  AutoQuotes' remedy at law is inadequate compensation for the injuries already inflicted and further threatened by the Defendants.  Therefore, the Defendants should be enjoined pursuant to 17 U.S.C. § 1203(b).

## COUNT VI – UNFAIR COMPETITION

94.    AutoQuotes repeats, repleads and realleges paragraphs 1 through 93, inclusive, and incorporates them herein.

95.     By taking portions of the AutoQuotes Database and placing them out to the public as their own, the Defendants have engaged in unfair, unconscionable and deceptive trade practices in violation of Fla. Stat. § 501.204 (1999) and the common law of the State of Florida.

96.     AutoQuotes has spent, and continues to expend substantial time, effort and money in developing, maintaining and marketing its AutoQuotes Database.

97.     AutoQuotes and the Defendants compete in the delivery of product and pricing information to the foodservice equipment and supply industry.

98.     The Defendants' misrepresentations are likely to confuse customers as to the source, origin, or affiliation of the information.

99.     The Defendants' actions harm AutoQuotes by causing AutoQuotes to lose potential customers.

100.    On information and belief, the Defendants will continue their unfair trade practices unless enjoined by the Court.

## PRAYER FOR RELIEF

WHEREFORE, AutoQuotes respectfully requests the following relief:

A.      That the Court issue preliminary and permanent injunctions restraining the Defendants, their agents, servants, employees, representatives, successors, and assigns, and all other persons, firms or corporations acting in concert, privity or participation with them from:

(1)     Continuing to perform any acts infringing the AutoQuotes Database, including (without limitation) copying, disseminating, publishing, transmitting,

distributing, displaying, storing, or creating derivative works.

(2)      Misappropriating any portion of the AutoQuotes Database, including any derivative versions;

(3)      Passing off any portion of the AutoQuotes Database as their own, or creating any potential misrepresentations of affiliation with AutoQuotes;

(4)      Removing, transferring, modifying or deleting any computer software, computer hardware, or other data used in connection with the Defendants' original copying of the AutoQuotes Database, including but not limited to records, logs or other documents, in any media, that relate to or constitute the unauthorized decompilation, disassembly, recreation, reproduction, duplication, dissemination or distribution of any portion of the AutoQuotes Database, or that reflect the identity of any persons involved in the above referenced acts, or any persons from whom the Defendants transmitted and/or obtained any unauthorized copies of the AutoQuotes Database;

(5)      Assisting, aiding or abetting any other person or business entity from engaging in or performing any of the above-described acts; and

B.      That the Court issue an order requiring the Defendants to file with this Court and serve on AutoQuotes within ten (10) days after service of the preliminary injunction, a report, in writing, under oath, setting forth in detail the manner and form in which the Defendants have complied with the preliminary injunction;

C.      That the Court issue an order requiring the Defendants to file with this Court and serve on AutoQuotes within ten (10) days after service of the permanent injunction, a report, in writing, under oath, setting forth in detail the manner and form in which the

Defendants have complied with the permanent injunction;

D.      That the Court issue an order requiring the Defendants to submit to an audit performed by AutoQuotes or a third-party retained by AutoQuotes, at the Defendants' expense, of all computers owned, controlled or used by the Defendants, to remove or to ensure that the Defendants have removed, all portions of the AutoQuotes Software and the AutoQuotes Database.

E.      That the Court order the Defendants to account to AutoQuotes for any and all profits, revenues and advantages, direct or indirect, derived by the Defendants from any source whatsoever by its unlawful acts;

F.      That the Court award actual damages AutoQuotes sustained as a result of the Defendants' copyright infringement and violation of the Digital Millennium Copyright Act, in an amount to be determined at trial or in lieu thereof, should AutoQuotes so elect, an award of statutory damages, pursuant to 17 U.S.C. §§ 504(c) and 1203(b), to be increased to the maximum permitted by law, for the Defendants' willful conduct;

G.      That the court award actual damages AutoQuotes sustained as a result of the Defendants unfair trade practices and breach of contract;

H.      That the Court award punitive and exemplary damages against the Defendants in favor of AutoQuotes for the willful and malicious conduct complained of herein;

I.      That the Court award attorney's fees and cost of suit herein, pursuant to 17 U.S.C. §§ 505 and 1203(b), and 15 U.S.C. § 1117(a); and

J.      That the Court grant such other and further relief as it deems just and proper.

## JURY DEMAND

WHEREFORE, AutoQuotes respectfully requests this Court grant a jury trial for all issues so triable.

Respectfully submitted,

Charles M. Johnston, Esquire
Florida Bar. No.: 264741
JOHNSTON, HAMMOND & BURNETT
One Independent Drive, Suite 2000
Jacksonville, Florida  32202
Phone: (904) 358-7400
Facsimile: (904) 353-6927
Trial Counsel


Mark J. Young
Florida Bar No.: 78158
DRAUGHON PROFESSIONAL ASSOCIATION
One Independent Drive, Suite 2000
Jacksonville, Florida  32202
Phone: (904) 358-3777
Facsimile: (904) 353-6927
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

AUTOQUOTES, INC.,                                        Civil Action No.:
a Florida corporation,
     Plaintiff                                          Filing Date:

     v.

COMMKITCHEN.COM, L.L.C.,
a Colorado limited liability company, and
ECOMM SYSTEMS CORPORATION,
a Delaware corporation,                                 VERIFICATION
KEVIN MINDENHALL,
an individual
     Defendants.

---

## VERIFICATION

    MARK J. YOUNG, being duly sworn, hereby deposes and says:

    I am the attorney for AutoQuotes (Florida) Inc., the plaintiff in this action.  I have read the foregoing Plaintiff's Complaint and know its contents.  The same are true to my own knowledge, except as to the matters stated to be alleged on information and belief, and as to those matters I believe them to be true.

                              Mark J. Young

Sworn to before me this
24 day of October, 2000

                                 **ELIZABETH A. CARTER**
                              Notary Public, State of Florida
                            My comm. expires Mar. 22, 2003
                              Comm. No. CC 819757

Notary Public

File:     AQT.0101
Document: AQT.009

# EXHIBIT A

Certificate of Copyright Registration
TX 5-158-580, September 19, 2000

# CERTIFICATE OF REGISTRATION



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below.The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

REGISTER OF COPYRIGHTS
*United States of America*

OFFICIAL SEAL



**FORM TX**
For a Nondramatic Literary Work
UNITED STATES COPYRIGHT OFFICE

R'

**TX 5-158-580**

EFFECTIVE DATE OF REGISTRATION

9      19      OO
Month    Day    Year

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

## 1
**TITLE OF THIS WORK ▼**

AutoQuotes

**PREVIOUS OR ALTERNATIVE TITLES ▼**

**PUBLICATION AS A CONTRIBUTION** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.    Title of Collective Work ▼

If published in a periodical or serial give:  Volume ▼      Number ▼      Issue Date ▼      On Pages ▼

## 2
**a**

**NAME OF AUTHOR ▼**

Autoquotes (Florida), Inc.

**DATES OF BIRTH AND DEATH**
Year Born ▼      Year Died ▼

Was this contribution to the work a "work made for hire"?
☑ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of _____
Domiciled in _____

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?    ☐ Yes  ☑ No
Pseudonymous?  ☐ Yes  ☑ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NOTE**

Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼
Entirety of work

**b**

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼      Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of _____
Domiciled in _____

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?    ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

**c**

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼      Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of _____
Domiciled in _____

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?    ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

## 3
**a**

**YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED** This information must be given in all cases.
1999 ◄ Year

**b**

**DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK**
Complete this information ONLY if this work has been published.
Month ► July      Day ► 1      Year ► 1999
U.S.A. ◄ Nation

## 4

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼

Autoquotes (Florida), Inc.
4425 Merrimac Avenue, Suite 3
Jacksonville, Florida 32210

See instructions before completing this space.

**TRANSFER** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

APPLICATION RECEIVED
SEP 19 2000
ONE DEPOSIT RECEIVED
SEP 19 2000
TWO DEPOSITS RECEIVED

FUNDS RECEIVED

DO NOT WRITE HERE
OFFICE USE ONLY

---

**MORE ON BACK ►**  • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.        • Sign the form at line 8.

DO NOT WRITE HERE

# EXHIBIT B

AutoQuotes End-User License Agreement

AUTOQUOTES END-USER LICENSE AGREEMENT


IMPORTANT - READ CAREFULLY:

This AutoQuotes End-User License Agreement ("EULA") is a legal agre
ement between you (either an individual or a single entity) and Aut
oQuotes (Motes Investment Corporation).  By installing, copying, or
 otherwise using the SOFTWARE PRODUCT(A.K.A. AutoQuotes), you agree
 to be bound by the terms of this EULA.  If you do not agree to the
 terms of this EULA, you many not install or use the SOFTWARE PRODU
CT.

SOFTWARE PRODUCT LICENSE

Copyright laws as well as other intellectual property laws protect
the SOFTWARE PRODUCT.  The SOFTWARE PRODUCT is licensed, NOT sold.

GRANT OF LICENSE.
This EULA grants the end user the following rights:

Applications Software -  You may install and use the SOFTWARE PRODU
CT at a single office site with up to five users.  Recreation or du
plication of any AutoQuotes CD, including the Spec Catalog CD is st
rictly prohibited by this license agreement.  Mailing or otherwise
transmitting this installation/upgrade program to another office si
te without a license is strictly prohibited.

Storage/Network Use - You may also store or install a copy of the S
OFTWARE PRODUCT on a storage device, such as a network server or ta
pe backup device.   You may install a single copy onto an internal
network server that can be shared and used concurrently on differen
t computers internally connected to the server at a single office s
ite with up to five users.

Limitations on Reverse Engineering, Decompilation, and Disassembly
- You may not reverse engineer, decompile, or disassemble the SOFTW
ARE PRODUCT.

Limitation of Liability - To the maximum extent permitted by applic
able law, in no event shall AutoQuotes be liable for any special, i
ncidental, indirect, or consequential damages whatsoever (including
 interruption, loss of business information, or any other pecuniary
 loss) arising out of the use of or inability to use the software p
roduct or the provision of or failure to provide support services,

even if AutoQuotes has been advised of the possibility of such dama
ges.  Because some states and jurisdictions do not allow the exclus
ion or limitation of liability, the above limitation may not apply
to you.

Any violation of this agreement may result in loss of technical sup
port, termination of your subscription, or possible legal action.

Revised 6/1/99

## AUTOQUOTES END-USER LICENSE AGREEMENT

### IMPORTANT – READ CAREFULLY:

This AutoQuotes End-User License Agreement ("EULA") is a legal agreement between you (either an individual or a single entity) and AutoQuotes (Motes Investments, Inc.). By installing, copying, or otherwise using the SOFTWARE PRODUCT, you agree to be bound by the terms of this EULA. If you do not agree to the terms of this EULA, you may not install or use the SOFTWARE PRODUCT.

### SOFTWARE PRODUCT LICENSE

Copyright laws, as well as other intellectual property laws, protect the SOFTWARE PRODUCT. The SOFTWARE PRODUCT is licensed, NOT sold.

### GRANT OF LICENSE.

This EULA grants the end user the following rights:

**Applications Software -** You may install and use the SOFTWARE PRODUCT on the PCs and/or laptops at your factory location. Recreation or duplication of any AutoQuotes CD, including the Spec Catalog CD is strictly prohibited by this license agreement. Mailing or otherwise transmitting this installation/upgrade program to another site without a license is strictly prohibited.

**Storage/Network Use –** You may also store or install a copy of the SOFTWARE PRODUCT on a storage device, such as a network server or tape backup device. You may install a single copy onto an internal network server that can be shared and used concurrently on different computers internally connected to the server at your location.

**Limitations on Reverse Engineering, Decompilation, and Disassembly –** You may not reverse engineer, decompile, or disassemble the SOFTWARE PRODUCT.

**Limitation of Liability –** To the maximum extent permitted by applicable law, in no event shall AutoQuotes be liable for any special, incidental, indirect, or consequential damages whatsoever (including interruption, loss of business information, or any other pecuniary loss) arising out of the use of or inability to use the software product or the provision of or failure to provide support services, even if AutoQuotes has been advised of the possibility of such damages. Because some states and jurisdictions do not allow the exclusion or limitation of liability, the above limitation may not apply to you.

**Any violation of this agreement may result in loss of technical support, termination of your subscription, or possible legal action.**

34